**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RISINGER HOLDINGS, LLC AND RONALD K. RISINGER DDS, MS, P.C. D/B/A GULF COAST ORTHODONTIC SPECIALISTS**<br>    **Plaintiffs** | § § § § § § | |
| **v.** | § § | **Civil Action No. _____** |
| **SENTINEL INSURANCE COMPANY, LTD. AND THE HARTFORD FINANCIAL SERVICES GROUP, INC.**<br>    **Defendants** | § § § § | |

---

**PLAINTIFFS' ORIGINAL COMPLAINT**

---

> **Insurers denied Plaintiffs' business interruption claim without a proper investigation and despite a finding from the local authorities that COVID-19 caused physical loss or damage that required Plaintiffs' business to be closed.**

Table of Contents

I.     Parties…………………………………………………………………………………3

II.    Jurisdiction & Venue……………………………………………………………………..4

III.   Conditions Precedent……………………………………………………………………..5

IV.    Factual Background………………………………………………………………………5

       A. Plaintiffs had specific coverage for this type of loss………………………………7

       B. Defendants wrongfully denied Plaintiffs' claim, without conducting any sort of investigation, and misrepresented policy terms to Plaintiffs………………………9

V.     Causes of Action…………………………………………………….…..…………….16

       A. COUNT ONE: Declaratory Judgment of Coverage: Plaintiffs seek an expedited ruling on the applicability of their policy terms to avoid ruinous financial damages…………………………………………………………………....…16

B.  COUNT TWO: The Hartford failed to conduct a reasonable investigation and violated the Texas Insurance Code and underlying Texas Law………………….17

C.  COUNT THREE: Sentinel breached its contract with the Plaintiffs……………..19

D.  COUNT FOUR: Both Defendants violated the Texas Deceptive Trade Practices Act…...……………………………………………………………………………19

E.  COUNT FIVE: Both Defendants violated the Texas Insurance Code Chapter 541……………………………………………………………………….20

F.  COUNT SIX: Sentinel violated the Prompt Pay Act……………………………..21

G.  COUNT SEVEN: Both Defendants breached their duty of good faith and fair dealing to Plaintiffs……………………………………………………………….23

VI.    Ambiguity……………………………………………………………………….23

VII.   Waiver and Estoppel…………………………………………………………….23

VIII.  Damages………………………………………………………………………….23

IX.    Attorney's Fees………………………………………………………………….24

X.     Jury Demand…………………………………………………………………….24

XI.    Prayer…………………………………………………………………………….24

TO THE HONORABLE COURT:

COMES NOW, RISINGER HOLDINGS, LLC and RONALD K. RISINGER DDS, MS, P.C. D/B/A GULF COAST ORTHODONTIC SPECIALISTS, (herein after referred to as "Plaintiffs"), complaining of Defendant Sentinel Insurance Company, Ltd. (hereinafter referred to as "Sentinel") and Defendant The Hartford Financial Services Group, Inc. (hereinafter referred to as "The Hartford") (collectively referred to as "Defendants") and hereby respectfully show unto the Court as follows:

## I.        PARTIES

1.  Plaintiff, Risinger Holdings, LLC, is a corporation that owns several orthodontist office buildings in Jefferson County, Texas, and is a domestic for-profit corporation operating in the State of Texas, with its principle place of business located at 3190 North St., Beaumont, TX 77702.

2.  Plaintiff, Ronald K Risinger DDS, MS, P.C. d/b/a Gulf Coast Orthodontic Specialists, is a corporation that owns and operates several orthodontist practices in Jefferson County, Texas, and is a domestic for-profit corporation operating in the State of Texas, with its principle place of business located at 3190 North St., Beaumont, TX 77702.

3.  Defendant, Sentinel Insurance Company, Ltd., is a for-profit foreign insurance company, doing business in the State of Texas, with its principle place of business located at One Hartford Plaza, Hartford, CT 06155. Defendant Sentinel is the insurance company that provided Plaintiffs' coverage and issued the policy at issue in this lawsuit. Defendant Sentinel may be served with process by serving its registered agent for process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

4.  Defendant, The Hartford Financial Services Group, Inc., is a for-profit foreign insurance company, doing business in the State of Texas, with its principle place of business located at One

Hartford Plaza, Hartford, CT 06155. Upon information and belief, Defendant Sentinel Insurance Company, Ltd. is a wholly or partially owned subsidiary of The Hartford and The Hartford did administer and/or oversee the claims administration process of Plaintiffs' claims that are made the basis of this lawsuit.

5.   Defendant The Hartford may be served with process by serving the Texas Commissioner of Insurance as it has not designated a registered agent for service in the State of Texas. Accordingly, The Hartford may be served with process by serving the Texas Commissioner of Insurance, Agent for Service of Process of The Hartford Financial Services Group, Inc., at 333 Guadalupe, Austin, TX 78701. The Commissioner should then forward citation and the petition to defendant by and through any officer or director at One Hartford Plaza, Hartford, CT 06155.

## II.            JURISDICTION & VENUE

6.   The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

7.   Furthermore, Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201(a) and 28 U.S.C. §2202 to determine whether it has coverage for the claims it seeks pursuant to the terms of its insurance policy.

8.   Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Texas, and Plaintiffs' principle place of business is situated in this district. Moreover, all of the properties that are affected and part of this lawsuit are situated in this district.

9.   The Hartford and/or Sentinel engage in the business of insurance in the State of Texas.  The conduct of The Hartford and/or Sentinel in the State of Texas includes:

a.  The making and issuing of contracts of insurance with the Plaintiffs;

b.  The taking and receiving the application of insurance for insurance from the Plaintiffs;

c.  The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiffs; and

d.  The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiffs.

## III.         CONDITIONS PRECEDENT

10. Plaintiffs have complied with all of their duties under the policy and have paid their premiums.  Notice pursuant to TEX. INS. CODE §542A.003 is not required, as this claim is not subject to the provisions of TEX. INS. CODE §542A.003, as the claim does not arise from damage caused wholly or partly by a specified force of nature, such as an earthquake, earth tremor, wildfire, flood, tornado, lightning, hurricane, hail, wind, snowstorm or rainstorm. *See* TEX. INS. CODE §542.001(2)(C) (defining the term "claim").

## IV.         FACTUAL BACKGROUND

11. Plaintiffs have insurance for the building and their loss of business income with Defendant Sentinel. Plaintiffs timely paid their premiums to Defendant Sentinel. Defendant Sentinel accepted those premiums, and Plaintiffs never made a claim with Defendant Sentinel. Defendant Sentinel issued policy no 65 SBA TS1113 SC to Plaintiffs (hereinafter "the policy"), which was in effect from November 11, 2019 to November 11, 2020. Now, after being forced to shut down its businesses in the wake of the novel COVID-19 pandemic, Defendants are failing to uphold their obligations and provide coverage to Plaintiffs, despite the fact that **no exclusion for loss due to virus or bacteria exists** in Plaintiffs' policy. *See* Exhibit 1.

12. The Insurance Services Office, or "ISO" is a subsidiary of Verisk Analytics, and provides risk assessment and management tools to insurance companies in general. Almost every single insurance policy that is issued lists a series of "ISO FORMS" in its endorsements / schedule of forms. These are forms that have been promulgated by ISO and are adopted widely by the insurance association.

13. In the wake of the last SARS outbreak in 2003, the Insurance Services Office (hereinafter "ISO") issued a bulletin or circular recommending that insurers adopt ISO FORM CP 01 40 07 06, which was titled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA". *See* Exhibit 2. The purpose of the form, as the circular notes, was to "address exclusion of loss due to disease-causing agents such as virus or bacteria." The circular also noted that although many commercial property policies contained a "pollution exclusion" ISO **did not believe that the pollution exclusion adequately addressed or excluded loss due to viral or bacterial contamination.** As such, it developed the specific exclusion of loss due to virus or bacteria. Specifically, the circular notes that examples of viral bacterial contaminants that are not contained in the pollution exclusion are "rotavirus, SARS, influenza, etc…." *See* Exhibit 2 at RISINGER000165. Additionally, the circular *specifically found* that buildings and personal property could become contaminated by these viruses and bacteria (thereby cause direct physical loss or damage to the property). *Id*. at RISINGER000166. Moreover, the circular contemplated that when disease-causing viral or bacterial contamination occurs, potential claims would involve business interruption (time element) losses. *Id*. at RISINGER000165. This was widely accepted by the insurance association, and the America Association of Insurance Services (AAIS) ended up adopting this particular exclusion.[1]

---

[1] *See* "Association Files to Exclude 'Virus or Bacteria' Related Diseases" Insurance Journal. 7 Nov. 2006 *available at* https://www.insurancejournal.com/news/national/2006/11/07/74032.htm (last accessed Apr. 14, 2020).

14. Importantly, therefore, when Plaintiffs renewed their policy, the policy **did not contain this specific exclusion, which could have excluded Plaintiffs' losses**. In fact, Plaintiffs' policy is *silent* as to any exclusion related to virus or bacteria. Plaintiffs' policy does contain the "pollution exclusion" that is mentioned in the ISO circular, but even the ISO believed that exclusion did not specifically apply to losses due to loss of virus or bacteria, and that a more *specific* exclusion was necessary for insurers to specifically exclude this kind of loss or damage. If Defendants wanted to exclude for these types of losses, it *easily* could have, but instead made an active and conscious decision not to exclude for any sort of virus or bacteria. In fact, to the contrary, the policy specifically contains coverage for virus and bacteria.

**A.  Plaintiffs had specific coverage for this type of loss**

15. Plaintiffs' policy specifically covers loss or damage for "fungi", wet rot, dry rot, bacteria, and virus. Specifically, the policy provides that the carrier will pay for loss or damage caused by virus, including the cost of removal of "fungi", wet rot, dry rot, or virus. *See* Exhibit 1 at RISINGER000126.

16. In their denial letter, Defendants quoted to this section, and then summarily stated that Plaintiffs did not have coverage as the virus did not result from a specified cause of loss. *See* Exhibit 3 at RISINGER000179. Yet, Defendants did not conduct any investigation, or ask Plaintiffs any questions regarding a potential specified cause of loss that could apply in this context. Rather, Defendants denied coverage without conducting any independent investigation to see if this coverage could be triggered.

17. Furthermore, Plaintiffs also have coverage for hazardous substances in their policy. The below is the pertinent language, quoted from the policy:

**(a) Hazardous Substances**

We will pay in any one occurrence for the additional cost, not to exceed $50,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance that is hazardous to human health or that has been declared by a government agency to be hazardous to human health. [2]

18. Once again, no investigation was done by Defendants to see if Plaintiffs had incurred any costs to repair, replace, clean up, or dispose of hazardous substances or contamination by a hazardous substance, like the COVID-19 virus. As defined, it is clear from the policy that the COVID-19 virus would fall squarely into the definition of hazardous substance. Specifically, it is clear that the COVID-19 virus "has been declared by a government agency to be hazardous to human health". Accordingly, Plaintiffs' policy has specific coverage for the COVID-19 virus, yet the company failed to uphold its obligations to extend coverage. In fact, Defendants are **<u>silent</u>** in their denial letter, and do not even acknowledge this coverage that is afforded to Plaintiffs in the denial letter. Defendants therefore wrongfully denied Plaintiffs' claim and did not extend the hazardous substances coverage to Plaintiffs.

19. Moreover, Plaintiffs' policy provides specific coverage for "dependent properties". Specifically, this means property that is owned, leased, or operated by others whom Plaintiffs depend on to:

---

[2] *See* Exhibit 1 at RISINGER000039.

**(a)** Deliver materials or services to you or to others for your account. But services do not include:

    **(i)** Water, communication, power services or any other utility services; or

    **(ii)** Any type of web site, or Internet service.

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business premises. [3]

20. Plaintiffs' vendors and suppliers have not been able to provide Plaintiffs with goods and/or materials due to the COVID-19 virus, which has impacted Plaintiffs' business. It is well known that health professionals across the country are facing a shortage of N95 masks and medical masks in general and personal protective equipment and there are vast shortages of these items, forcing Plaintiffs to take on less patients.

21. Moreover, due to the COVID-19 virus, Plaintiffs have been unable to advertise and/or market for new patients, which has caused substantial loss to Plaintiffs.

22. Defendants did no investigation into this coverage and/or how it applies to Plaintiffs' business in the context of COVID-19. Defendants wrongfully denied Plaintiffs' claim and did not extend the dependent properties' coverage.

**B. Defendants wrongfully denied Plaintiffs' claim, without conducting any sort of investigation, and misrepresenting policy terms to Plaintiffs.**

23. Plaintiffs' policy is an "all risk" policy, which means that it covers all risks, *unless specifically excluded* by the policy. As noted *supra*, Plaintiffs' policy contains NO exclusion for loss due to virus or bacteria, but in fact, specifically covers losses for virus or bacteria. The

---

[3] *See* Exhibit 1 at RISINGER000046.

pollution exclusion does not apply to losses like COVID-19. Moreover, Plaintiffs' policy provides coverage for loss of business income, extra expense, and civil authority. It also has coverage for removal and clean up of hazardous substances and damage caused by hazardous substances. Below is an excerpt of coverages from Plaintiffs' Policy:

```
PROPERTY OPTIONAL COVERAGES APPLICABLE  LIMITS OF INSURANCE
     TO ALL LOCATIONS

BUSINESS  INCOME  AND  EXTRA  EXPENSE
COVERAGE                                12 MONTHS ACTUAL LOSS SUSTAINED
COVERAGE  INCLUDES  THE  FOLLOWING
COVERAGE  EXTENSIONS:

ACTION  OF  CIVIL  AUTHORITY:           30 DAYS
EXTENDED  BUSINESS  INCOME:             30 CONSECUTIVE DAYS

OUTDOOR  SIGNS
FORM SS 04 44
   REPLACEMENT  COST                    $   10,000

EMPLOYEE  DISHONESTY:  FORM SS 04 42
  DEDUCTIBLE:    $1000
   EACH  OCCURRENCE                      $   50,000

EQUIPMENT  BREAKDOWN  COVERAGE
DEDUCTIBLE:  $2,500 FORM: SS 40 65
  COVERAGE  FOR DIRECT PHYSICAL LOSS
  DUE TO:
   MECHANICAL  BREAKDOWN,
   ARTIFICIALLY  GENERATED  CURRENT
   AND STEAM EXPLOSION

THIS  ADDITIONAL  COVERAGE  INCLUDES
THE  FOLLOWING  EXTENSIONS
   HAZARDOUS  SUBSTANCES               $   50,000
   EXPEDITING  EXPENSES                $   50,000
```
[4]

24. COVID-19 stems from a coronavirus strain that is called "SARS", which stands for severe acute respiratory syndrome. The first outbreak of SARS was in 2003, as noted *supra*. As noted, *supra*, the insurance industry did not believe that the pollution exclusion applied to viral or bacterial outbreak, such as SARS viruses.

---

[4] *See* Exhibit 1 at RISINGER000022.

25. On March 11, 2020, the World Health Organization officially declared COVD-19 a global pandemic. In calling the COVID-19 breakout a pandemic, the World Health Organization Director-General noted that this was an "unprecedented" event and that there has <u>never</u> been a pandemic in history that has been sparked by a coronavirus. This was the first time. On March 13, 2020, Governor Greg Abbott declared a state of disaster for the entire state of Texas, in response to and as an attempt to mitigate the spread of COVID-19. On March 16, 2020, President Trump acknowledged that COVID-19 was a pandemic, and restricted Americans' interactions and stated that all gatherings should contain of no more than 10 people. In Jefferson County, where Plaintiffs' business operates and is located, County Judge Jeff Branick issued his Seventh Amended Emergency Order on March 27, 2020 that stated in relevant part that the COVID-19 virus causes property loss or damage, and therefore ordered all residents to stay at home:

> **Whereas,** the COVID-19 virus is contagious and spreads through person-to-person contact, especially in group settings, and
>
> **Whereas, the COVID-19 virus causes property loss or damage** due to its ability to attach to surfaces for prolonged periods of time, and
>
> [5]

26. The American Dental Association recommended that dentists postpone all elective procedures for a minimum of three weeks.[6] The CDC also issued the same guidance, in line with the American Dental Association, stating that all non-emergent dental operations cease. This is primarily because of the unique way in which the virus spreads, which is through respiratory droplets, which makes the dental profession, as a whole, more susceptible than most to transmission. On March 22, 2020, Governor Abbott, by Executive Order GA 09, ordered all

---

[5] *See* Exhibit 6 at RISINGER000189.
[6] *See* "ADA Recommending Dentists Postpone Elective Procedures" <u>American Dental Association</u>. 16 Mar 2020 *available at* <u>https://www.ada.org/en/publications/ada-news/2020-archive/march/ada-recommending-dentists-postpone-elective-procedures</u> (last accessed April 14, 2020).

dentists and health care professionals to postpone all elective surgeries and non-emergency procedures for at least one month. *See* Exhibit 4. This order shut down Plaintiffs' business and made it so that Plaintiffs had to close all three of their locations. On April 17, 2020, Governor Abbott, under GA-15, further declared that he was extending the prior Executive Order to not allowing elective procedures to begin until May 9, 2020. *See* Exhibit 5. Failure to comply with this order would result in a fine and/or jailtime. *Id*.

27. Plaintiffs submitted a claim to their insurance company, and were assigned claim no. Y2H F 32924, for the loss of business income they sustained, extra expenses they incurred, and other coverages that were applicable to its claim. Without sending an adjuster, asking for any documentation, or investigating the ways in which COVID-19 affected Plaintiffs' property, Defendants denied the claim on March 26, 2020. The claim denial letter was written by Defendant The Hartford's employee under the authority of Defendant Sentinel. It is clear that the denial letter was a form letter that was most likely sent to each of Defendants' insureds without regards for the individual circumstances that surround their losses.

28. First, Defendants wrongly assert and misrepresent that the virus did not cause property damage at Plaintiffs' place of business:

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered.  Even if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss.[7]

29. As noted *supra*, the Jefferson County 7th Amended Emergency Order made an express finding that the COVID-19 virus does cause property damage or loss, that may continue for prolonged periods of time on surfaces, which constitutes direct physical loss or damage at Plaintiffs' property.

---

[7] *See* Exhibit 3 at RISINGER000173.

30. Next, instead of accepting any responsibility or paying this claim themselves, Defendants advise their customers instead to ask the government for help and directs them to the Small Business Administration loan website, asking taxpayers to pay for what they should cover.

31. Thereafter, instead of citing to any exclusions in its letter and applying it to the facts of Plaintiffs' loss, Defendants attach a 4 page document containing policy language, and broadly state that the loss is not covered due to these exclusions, without specifying how or why it applies to Plaintiffs' claim.

32. It is widely known that the COVID-19 virus can spread not only from person to person contact, but also through contact with contaminated surfaces. The CDC issued this guidance early on:

## Spread from contact with contaminated surfaces or objects

It may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes. This is not thought to be the main way the virus spreads, but we are still learning more about this virus. CDC recommends people practice frequent "hand hygiene," which is either washing hands with soap or water or using an alcohol-based hand rub. CDC also recommends routine cleaning of frequently touched surfaces. [8]

33. Afterwards, the NYTimes also reported that the virus can last on surfaces for multiple days, up to three days on plastic and steel, a few hours on copper, and at least 24 hours on cardboard. "Whether a surface looks dirty or clean is irrelevant. If an infected person sneezed and a droplet landed on a surface, a person who then touched the surface could pick it up."[9]

34. In *Motorists Mutual Ins. Co. v. Hardinger*, the Third Circuit Court of Appeals did not overrule the lower court's ruling that bacteria or virus that could make a residence uninhabitable

---

[8] *See* "How COVID-19 Spreads" Center for Disease Control. *available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed Apr. 14, 2020).
[9] *See* "Surfaces? Sneezes? Sex? How the Coronavirus Can and Cannot Spread" NYTimes. 19 Mar 2020 *available at* https://www.nytimes.com/article/coronavirus-how-it-spreads.html (last accessed Apr. 14, 2020).

constituted direct physical loss or damage under the insured's policy. *See* 131 Fed. App'x 823, 826-27 (3rd Cir. May 2005).

35. Plaintiffs' entire business comprises of working on patients through their upper respiratory system and exposing its employees and staff to respiratory droplets. It is clear that these droplets could remain on Plaintiffs' surfaces and have in fact remained on Plaintiffs' surfaces without Plaintiffs' knowledge, as they are naked to the human eye, and caused loss or damage to Plaintiffs' property.

36. Recognizing this heightened risks for this profession, Governor Abbott specifically closed all dental and healthcare offices unless they are doing emergency procedures. Since March 22, 2020, Plaintiffs have been unable to perform the majority of its procedures, and solely done emergency procedures.

37. It is interesting to note that Plaintiffs' other insurance carrier, which only insures Plaintiffs' property at the Lumberton location, believed that a civil authority order prohibited access to the described premises and confirmed the same:

> 1. **A civil authority must prohibit access to the described premises:** We confirmed that a civil authority prohibited access to the described premises.

Yet, due to Defendants' lackluster investigation, it did not find a civil authority order that applied:

> We have no information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area of your scheduled premises; accordingly, this additional coverage is not available for your claimed loss of business income.  If you believe there is an order of a civil authority as the result of a Covered Cause of Loss to property in your immediate area, please immediately send it to my attention for review. [10]

38. It is clear that the COVID-19 pandemic has caused direct physical loss to the property, which is further supported by local governmental orders, and that because of that direct physical loss, in connection with a civil authority order, Plaintiffs' businesses were forced to close and will

---

[10] *See* Exhibit 3 at RISINGER000176.

continue to be closed. However, Defendants refuse to pay and continue to refuse to pay despite the overwhelming evidence to the contrary that this claim is covered.

39. Defendant Sentinel failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the policy. Specifically, it failed and refused to pay full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and loss of business income, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. Defendant Sentinel's conduct constitutes a breach of the insurance contract between Defendant Sentinel and Plaintiffs.

40. Defendants Sentinel and The Hartford misrepresented to Plaintiffs that their loss was excluded by the policy terms, without applying such exclusions to the policy, and failing to recognize that there was a valid civil authority order; that Plaintiffs have no exclusion for loss due to virus or bacteria; and that Plaintiffs in fact have specific coverage for loss due to virus and/or bacteria.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practice. TEX. INS. CODE §541.060 (a) (1).

41. Defendants Sentinel and The Hartford failed to attempt to settle Plaintiffs' claim in a fair and equitable manner, although Defendants' liability to pay Plaintiffs was reasonably clear under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060 (a)(2)(A).

42. Defendants Sentinel and The Hartford refused to fully compensate Plaintiffs under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. To date, there has been no adjuster that has come out to investigate or inspect Plaintiffs' property, no questions asked about Plaintiffs' loss of business income, and no research into even the basics of Plaintiffs' claim, such as what civil authority order forced Plaintiffs to shut down, despite there

being wide media coverage about the same. Specifically, Defendants performed an outcome-oriented investigation by ignoring evidence supporting coverage. Defendants' unreasonable investigation resulted in a biased, unfair, and inadequate evaluation of Plaintiffs' losses and resulted in further damage to Plaintiffs' property.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

43. Defendants failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated time of receiving notice of Plaintiffs' claim.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

## V.        CAUSES OF ACTION

### A.  COUNT ONE: Declaratory Judgment of Coverage: Plaintiffs seek an expedited ruling on the applicability of their policy terms to avoid ruinous financial damages

44. Because all of Plaintiffs' locations are currently closed due to the COVID-19 pandemic, the proceeds that Plaintiffs reasonably expected to receive from their carrier during this outbreak are essential to pay for Plaintiffs' fixed costs, and other expenses, at a time when little to no revenue is being earned from patients of Plaintiffs' businesses.

45. Pursuant to 28 U.S.C. §§2201 and 2202, and FED. R. CIV. P. 57, Plaintiffs seek the following declarations to determine questions of actual controversy between the parties:

a) That Defendant Sentinel issued Policy No. 65 SBA TS1113 SC ("the Policy");

b) That the Policy was in effect on March 1, 2020 and remains in effect until November 11, 2020;

c) That the Policy contained no exclusion of loss due to virus or bacteria as seen in Exhibit 2, and therefore contained no exclusion for viruses, such as COVID-19;

d) That the Policy is an all risk policy, affording coverage unless there is a specific exclusion that prohibits coverage;

e) That there is no specific exclusion that would apply to Plaintiffs' losses from COVID-19;

f) That COVID-19, and the SARS-CoV-2 pathogen is capable of causing direct physical loss or damage to property;

g) That COVID-19 and the SARS-CoV-2 pathogen did cause direct physical loss or damage to the property;

h) That Plaintiffs' Policy provides coverage for loss due to a civil authority order;

i) That on March 22, 2020, Governor Abbott's Executive Order GA-09 forced all dental offices and health care offices in the state to close unless performing emergency services;

j) That Plaintiffs' businesses are orthodontic offices operating in the State of Texas that perform non-emergent as well as emergency medical services;

k) That on March 22, 2020, Governor Abbott's Executive Order was an act of civil authority essentially closing Plaintiffs' businesses; and

l) That Plaintiffs' policy provides coverage for loss due to virus or bacteria, such as COVID-19.

**B.  COUNT TWO:  The Hartford failed to conduct a reasonable investigation and violated the Texas Insurance Code and underlying Texas Law.**

46. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

47. Under Texas law, The Hartford was obligated to conduct a reasonable investigation to promptly pay claims when liability is reasonably clear.

48. During The Hartford's investigation, it failed to properly assess Plaintiffs' losses related to COVID-19, including Plaintiffs' claim for loss to the property, extra expenses, loss due to civil authority, and loss of business income. The Hartford sent no representative to inspect Plaintiffs' property, did not ask Plaintiffs' questions related to their loss, did not consider the civil authority orders from Governor Abbott or Judge Branick, or even seek any financial information related to

Plaintiffs' loss. Instead, The Hartford summarily denied Plaintiffs' loss, without so much as one phone call or question as to what Plaintiffs' loss consists of.

49. As such, The Hartford spent an inadequate time scoping for Plaintiffs' loss or damage and misrepresented that Plaintiffs' loss or damage was not a covered cause of loss. Falsehoods and misrepresentations may be communicated by action or spoken word. Defendant The Hartford's misrepresentations include 1) failing to conduct a reasonable investigation of Plaintiffs' loss or damage; 2) stating that Plaintiffs' loss or damage were less severe than they in fact were; 3) using Plaintiffs' statements about non-severity of losses and/or damages as basis for denying properly covered losses or damages; 4) failing to provide adequate explanation of the denial Plaintiffs received; 5) representing that all of Plaintiffs' losses or damages were not covered when in fact they are covered. These statements constitute a violation of TEX. INS. CODE §541.060(a)(1).

50. Furthermore, The Hartford conducted an outcome-oriented investigation. Defendant The Hartford's conduct constitutes multiple violations of the TEX. INS. CODE §541.060(a). All actions are made actionable pursuant to TEX. INS. CODE §541.151.

51.  Defendant, The Hartford's unfair settlement practice of failing in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and/or unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A). Defendant, The Hartford's, failure to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for the offer of a compromise and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3). Defendant, The Hartford's, failure within a reasonable time to affirm or deny coverage of the claim to Plaintiffs or to submit a reservation of rights to Plaintiffs constitutes an unfair method of

competition and/or unfair or deceptive act or practice in the insurance of Texas. TEX. INS. CODE §541.060(a)(4). Defendant, The Hartford's, refusal to pay Plaintiffs' claim without conducting a reasonable investigation constitutes an unfair method of competition and/or unfair or deceptive act or practice in the insurance of Texas. Tex. Ins. Code §541.060(a)(7).

**C.   COUNT THREE: Sentinel breached its contract with the Plaintiffs.**

52. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

53. To prevail on a valid breach of contract claim, Plaintiffs must prove that 1) there was a valid contract; 2) that Plaintiffs have performed their obligations under the contract or tendered performance; 3) that the defendant has breached the contract in some manner; and 4) Plaintiffs have sustained damages as a result of defendant's breach. *See Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied).

54. At the time of the loss, Plaintiffs had in place a policy issued by Defendant Sentinel. Defendant Sentinel does not dispute that a valid contract was in place. Plaintiffs' premiums were current and all conditions precedent to recovery under the policy were made. Furthermore, Plaintiffs fulfilled their obligation under the policy, and executed all duties after loss.

55. Defendant Sentinel wrongfully failed to comply with the terms of the contract, as it relates to its duties after loss, by failing to conduct a reasonable investigation and pay Plaintiffs the full benefits owed after a covered loss. Defendant Sentinel is therefore in breach of the contract of insurance issued to Plaintiffs.

56. Defendant's conduct constitutes a breach of contract, resulting in damages to Plaintiffs.

**D.   COUNT FOUR: Both Defendants violated the Texas Deceptive Trade Practice Act.**

57. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

58. Plaintiffs are "consumers" as defined by TEX. BUS. & COMM. CODE § 17.45(4).  Plaintiffs sought or acquired goods or services by purchasing those goods or services from Sentinel and The Hartford. Defendants violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") (TEX. BUS. & COM. CODE §17.44 et seq.) because they engaged in false, misleading and/or deceptive acts or practices that Plaintiffs relied on to their detriment.

59. The acts and omissions of Defendants also constitute violations of the Texas Deceptive Trade Practice Act, including, but not limited to:

      a.      Committing false, misleading or deceptive acts or practices as defined by §17.46(b); and

      b.      Use of employment of an act or practice in violation of the Texas Insurance Code Chapter 541.151 et seq. as described herein.

60. The acts and omissions of Defendants were a producing cause of the Plaintiffs' damages.

61. Defendants' conduct was committed knowingly and/or intentionally because, at the time of the acts and practices complained of, Defendants had actual awareness of the falsity, deception or unfairness of the acts or practices giving rise to Plaintiffs' claim and it acted with a specific intent that Plaintiffs act in detrimental reliance on the falsity or deception and/or in detrimental ignorance of the unfairness.

**E.**  **COUNT FIVE: Both Defendants violated the Texas Insurance Code Chapter 541**

62. Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

63. Defendants violated the Texas Insurance Code Chapter 541 et seq.  because they engaged in unfair and/or deceptive acts or practices in the business of insurance.  Specifically, their acts and omission include violation of:

      (a)      TEX. INS. CODE §541.051;

      (b)      TEX. INS. CODE §541.052;

(c)     Tex. Ins. Code §541.059;

(d)     engaging in unfair settlement practices by:

     (i)     misrepresenting to Plaintiffs a material fact or policy provision relating to coverage at issue Tex. Ins. Code §541.060(a)(1);

     (ii)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim with respect to which liability has become reasonably clear Tex. Ins. Code §541.060(a)(2);

     (iii)   failing to promptly provide Plaintiffs a reasonable explanation of the factual and legal basis in the policy for the denial of the claim Tex. Ins. Code §541.060(a)(3);

     (iv)    failing to affirm or deny coverage within a reasonable time or submit a reservation of rights letter Tex. Ins. Code §541.060(a)(4); and

     (v)     refusing to pay a claim without conducting a reasonable investigation of the claim Tex. Ins. Code §541.060(a)(7).

(e)     misrepresenting Plaintiffs' insurance policy by:

     (i)     making an untrue statement of material fact Tex. Ins. Code §541.061(1);

     (ii)    failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made Tex. Ins. Code §541.061(2); and

     (iii)   making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact Tex. Ins. Code §541.061(2); and

(f)     §17.46(b) of the Texas Deceptive Trade Practice Act, incorporated by Texas Insurance Code §541.151.

64. Defendants' conduct was committed knowingly because it had actual awareness of the falsity, unfairness or deception of their acts or practices made the basis for Plaintiffs' claim for damages under the Texas Insurance Code.

65. Defendants' conduct described above was a producing cause of Plaintiffs' damages.

**F.   COUNT SIX: Sentinel violated the Prompt Pay Act**

66. Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

67. Defendant Sentinel violated the Texas Insurance Code Chapter 542 because it failed to do the following within the statutorily mandated time of receiving all necessary information:

(1) Failing to timely acknowledge the Plaintiffs' claim;

(2) Failing to commence an investigation of Plaintiffs' claim;

(3) Failing to request all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated deadlines;

(4) Failing to give proper notice of the acceptance or rejection of part or all of Plaintiffs' claim;

(5) Failing to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all information;

(6) Failing to pay Plaintiffs' claim without delay; and

(7) Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiffs' claim.

68. Defendant Sentinel violated the Texas Insurance Code Chapter 542 by:

(1) Knowingly misrepresented to the Plaintiffs pertinent facts or policy provisions relating to coverage;

(2) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policy;

(3) Not attempting in good faith to effect a prompt, fair, and equitable settlement of the claim when liability became reasonably clear; and

(4) Compelling Plaintiffs to institute a suit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered in the suit brought by Plaintiffs.

69. Such failures constitute violations of Texas Insurance Code §§ 542.055, 542.056, 542.057, and 542.058.  As a result of the foregoing violations, Plaintiffs request damages under TEX. INS. CODE §542.060.

**G.** **COUNT SEVEN: Both Defendants breached their duty of good faith and fair dealing to Plaintiffs.**

70. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

71. Defendants Sentinel and The Hartford owed Plaintiffs a duty of good faith and fair dealing. Defendants breached this duty when they conducted an unreasonable investigation, denied Plaintiffs' claim, and misrepresented material facts because Defendants knew or should have known that it was reasonably clear that Plaintiffs' claim was covered.  Defendants' breach of this duty was a proximate cause of Plaintiffs' damages.

## VI.　　　　AMBIGUITY

72. The policy in place at the time of the pandemic of COVID-19, Policy Number 65 SBA TS1113 SC, contained patent and latent ambiguities concerning the terms of the policy, definitions, and insureds' duties after loss.

## VII.　　　　WAIVER AND ESTOPPEL

73. Defendants have waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## VIII.　　　　DAMAGES

74. As a direct result of Defendants' conduct, Plaintiffs have suffered economic damages all of which they are entitled to recover. Plaintiffs are entitled to recover, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.

75. Pursuant to the DTPA and the TEXAS INSURANCE CODE, Plaintiffs are also entitled to recover treble damages because Defendants' conduct was committed knowingly.

76. Plaintiffs are entitled to exemplary damages as a result of Defendants' breach of duties owed. When viewed objectively from the standpoint of the Defendants at the time of the occurrence in question, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others and which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## VIII.        ATTORNEY'S FEES

77. Plaintiffs are entitled to recover its court costs and reasonable and necessary attorney's fees, under 22 U.S.C. §2202, as such an award is authorized by applicable Texas law for comparable actions. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE §38.001; TEX. INS. CODE §542.060; and TEX. BUS. & COMM. CODE §17.50(d).

## IX.        JURY DEMAND

78. Plaintiffs assert their right under the Seventh Amendment to the U.S. Constitution, and demands, in accordance with FED. R. CIV. P. 38, a trial by jury on all issues.

## X.        PRAYER

For these reasons, Plaintiffs request that Defendants be cited to appear and answer; that declaratory judgment be entered in Plaintiffs' favor against Defendants as stated herein; that Plaintiffs have judgment against Defendants for economic damages, treble damages, exemplary damages, reasonable and necessary attorney's fees and court costs, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief to which Plaintiffs may show themselves entitled.

Respectfully Submitted,
THE BRASHER LAW FIRM, PLLC

By:

Clint Brasher
Texas Bar No. 24009915
clint@brasherattorney.com
Nishi Kothari
Texas Bar No. 24087862
nishi@brasherattorney.com
Joe Muckleroy
Texas Bar No. 24065801
joe@brasherattorney.com
6430 Wellington Place
Beaumont, Texas 77706
(409) 832-3737 Telephone
(409) 832-3838 Fax
*Attorneys for the Plaintiffs*